IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2018 Session

## STATE OF TENNESSEE F/B/O CITY OF COLUMBIA v. 2013 DELINQUENT TAXPAYERS

**Appeal from the Chancery Court for Maury County**
**No. 15-173    David L. Allen, Judge**

_____

### No. M2017-01439-COA-R3-CV

_____

This case involves Appellant's attempt to redeem property that was purchased by Appellee at a tax sale. Appellant executed a power of attorney in favor of his son, which vested his son with authority to file the motion to redeem the subject property. Appellee objected to the motion on the ground that son, who is not a licensed attorney, engaged in the unauthorized practice of law by filing the motion to redeem; thus, Appellee argued that the motion was void. In response to the motion, Appellant filed an amended motion to redeem with the assistance of an attorney. The amended motion, however, was filed after the one year redemption period had expired. The trial court denied the amended motion to redeem, finding that the original motion to redeem was void and that the amended motion to redeem did not relate back to the date son filed the original motion. Thus, the trial court held that the amended motion was untimely. We hold that Appellant's son was authorized, under the power of attorney, to file the original motion to redeem and that the filing of the form motion provided by the clerk's office was not an unauthorized practice of law. Accordingly, we reverse the trial court's order and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and ARNOLD B. GOLDIN, J., joined.

Leland Bruce Peden, Columbia, Tennessee, for the appellant, C.E. Nixon.

S. Madison Roberts, IV, Franklin, Tennessee, for the appellee, G. Co. Investments, LLC.

# OPINION

## I. Background

Jane Peebles Buchanan ("Buchanan"), the original defendant in this action, owned property located at 902 Hillcrest Avenue in Columbia, Tennessee ("the Property"). It is undisputed that Buchanan failed to pay property taxes on the Property. As a result, the City of Columbia, the original plaintiff in this action, commenced tax sale proceedings on the Property.

On March 17, 2016, G. Co. Investments, LLC ("Appellee" or "GC"), purchased the Property at the tax sale for $21,000.00. On March 24, 2016, the Chancery Court ("trial court") entered a Tax Sale Notice Order confirming the sale. On June 30, 2016, before expiration of the one year redemption period, C.E. Nixon ("Appellant" or "Nixon") paid Buchanan $69,198.79 for the Property, and Buchanan executed a Quitclaim Deed to Nixon. Tennessee Title & Escrow Affiliates, LLC ("TTEA") served as the settlement agent; as part of the Nixon closing, TTEA withheld $4,198.79 for back real estate taxes owed to the Maury County Trustee. That same day, TTEA issued a check for $4,198.79 to the Maury County Trustee. On August 9, 2016, the Maury County Clerk and Master, Larry Roe, returned the June 30, 2016 check to TTEA along with a pre-printed form titled "Motion and Notice to Redeem Property Pursuant to T.C.A. § 67-5-2701 et seq." Although Mr. Roe allegedly informed TTEA of the proper procedures for redeeming property sold at a tax sale, he never heard back from TTEA.

On March 15, 2017, after learning that the property had not been redeemed from the tax sale, John Nixon, C.E. Nixon's son, executed a form titled "Motion and Notice to Redeem Property Pursuant to T.C.A. § 67-5-2701 et seq" ("Motion to Redeem"). The form was provided to John Nixon by an employee in the Clerk and Master's office. John Nixon, who holds his father's power of attorney, signed his name to the Motion to Redeem. On March 17, 2017, John Nixon delivered funds totaling $6,519.55 to the Clerk and Master to redeem the property from the tax sale; this amount covered all taxes, interest, and costs required for redemption. On April 3, 2017, GC filed its Response Objecting to the Motion to Redeem. On April 13, 2017, Appellant's counsel filed an Amended Motion and Notice to Redeem Property Pursuant to T.C.A. § 67-5-2701 et seq. (the "Amended Motion to Redeem"). The Amended Motion to Redeem was signed by C.E. Nixon. On June 5, 2017, the trial court heard the Amended Motion to Redeem. By order of June 30, 2017, the trial court denied the Amended Motion. Specifically, the trial court found: (1) John Nixon engaged in the unauthorized practice of law when he filled out the Motion to Redeem on behalf of his father, which resulted in the motion being null and void; (2) C.E. Nixon's Amended Motion to Redeem was filed after the deadline to redeem had passed; and (3) C.E. Nixon's Amended Motion to Redeem could not relate back to the motion filed by John Nixon because an amended motion cannot relate back to a void motion. Appellant appeals.

## II. Issues

Appellant raises four issues for review which we restate as follows:

1. Whether the trial court erred in finding that John Nixon engaged in the unauthorized practice of law when he filled out the Motion and Notice to Redeem Property Pursuant to Tennessee Code Annotated Section 67-5-2701.

2. Whether the trial court erred in finding that completing the Motion and Notice to Redeem Property Pursuant to Tennessee Code Annotated Section 67-5-2701 required the professional judgment of an attorney.

3. Whether the trial court erred when it found that the Motion and Notice to Redeem Property Pursuant to Tennessee Code Annotated Section 67-5-2701 was a nullity.

4. Whether the trial court erred in denying Appellant's Motion and Notice to Redeem Property Pursuant to Tennessee Code Annotated Section 67-5-2701 as being untimely.

## III. Standard of Review

This case was tried without a jury. Therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008). Whether a nonlawyer engaged in the unauthorized practice of law is a question of law, which we review *de novo* without a presumption of correctness. ***Tennessee Envtl. Council, Inc. v. Tennessee Water Quality Control Bd.***, 254 S.W.3d 396, 402 (Tenn. Ct. App. 2007).

## IV. Analysis

### A. Unauthorized Practice of Law

It is well settled that the Tennessee Supreme Court "possesses not only the inherent supervisory power to regulate the practice of law, but also the corollary power to prevent the unauthorized practice of law." ***Petition of Burson***, 909 S.W.2d 768, 773 (Tenn. 1995). In ***Petition of Burson***, the Tennessee Supreme Court adopted the following general standard for what constitutes the "practice of law:"

> It is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law. Functionally, the practice of law relates to the rendition of services for others that call for the

professional judgment of a lawyer. The essence of the professional judgment of the lawyer is the lawyer's educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. Where this professional judgment is not involved, non-lawyers, such as court clerks, police officers, abstracters, and many governmental employees, may engage in occupations that require a special knowledge of law in certain areas. But the services of a lawyer are essential in the public interest whenever the exercise of professional legal judgment is required.

*Petition of Burson*, 909 S.W.2d at 775 (quoting Tenn. Sup. Ct. R. 8, EC 3-5).[1] The public policy behind the prohibition of the unauthorized practice of law is to "serve the public right to protection against unlearned and unskilled advice in matters relating to the science of the law." *Petition of Burson*, 909 S.W.2d at 777 (quoting *Application of New Jersey Soc. of Certified Pub. Accountants*, 507 A.2d 711, 714 (N.J. 1986)). Therefore, the question of whether an individual has engaged in the unauthorized practice of law is very fact specific as it concerns whether that individual gave advice or rendered services on matters that require the professional judgment of a lawyer. *Tennessee Envtl. Council, Inc. v. Tennessee Water Quality Control Bd.*, 254 S.W.3d 396, 404 (Tenn. Ct. App. 2007) (citing *Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow*, No. M1996-00020-COA-R3-CV, 1999 WL 1128847, at *3 (Tenn. Ct. App. 1999)).

This Court has previously held that a woman, who operated a business called "Divorce Typing Service," engaged in the unauthorized practice of law. *Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow*, No. M1996-00020-COA-R3-CV, 1999 WL 1128847, at *1 (Tenn. Ct. App. 1999). In *Fifteenth Judicial District Unified Bar Ass'n*, Angie Glasgow, who was not a licensed attorney, prepared the following documents for her clients: (1) complaints for divorce; (2) marital dissolution agreements; (3) final divorce decrees; and (4) other related documents. *Id.* Ms. Glasgow also provided information concerning the filing of these documents. *Id.* Ms. Glasgow further admitted that she occasionally filed divorce complaints for her clients. *Id.* In determining that Ms.

---

[1] We note the following from *In re Estate of Green v. Carthage General Hospital, Inc.*, 246 S.W.3d 582, 585 (Tenn. Ct. App. 2007):

The Rules of Professional Conduct have replaced the Code of Professional Responsibility, and while a rule still exists against assisting a person in the unauthorized practice of law, Tenn. Sup. Ct. R. 8, RPC 5.5[(a)], no commentary equivalent to "ethical considerations" appear. However, this change does not affect the standard to be applied by the courts in determining whether particular acts, if performed by nonlawyers, constitute the unauthorized practice of law. The Supreme Court has established that standard, specifically adopting the "professional judgment" requirement. *Petition of Burson*, 909 S.W.2d at 775-76.

Glasgow engaged in the unauthorized practice of law, this Court stated:

> The Tennessee Supreme Court has held that the "preparation and filing of a complaint" is the practice of law because it requires the professional judgment of a lawyer. *See **Old Hickory Eng'g & Mach. Co. v. Henry***, 937 S.W.2d 782, 786 (Tenn. 1996). We do not construe the Court's use of the conjunction "and" in the phrase "preparation and filing" to mean that persons who prepare complaints but do not file them are not engaging in the practice of law. The preparation of the complaint is precisely the work that requires a lawyer's professional judgment. Accordingly, we conclude that with its decision in ***Old Hickory Eng'g & Mach. Co. v. Henry***, the Court has aligned Tennessee with the majority of jurisdictions holding that the drafting of pleadings and legal documents or the selection and completion of form documents constitutes the practice of law.
>
> Ms. Glasgow, by her own admission, is performing more than mere clerical work for her clients. She is not simply reducing her clients' words to writing or filling in blanks on pre-printed forms at the specific direction of her clients. Rather, she is preparing legal documents that require more legal knowledge than is possessed by ordinary lay persons. She is eliciting information from her clients and then incorporating the information into unique legal documents that she creates. These documents, which include divorce complaints, marital dissolution agreements, final divorce decrees, and quitclaim deeds, will potentially have significant, far-reaching effects not only on her clients, but also on the members of her clients' families. Thus, Ms. Glasgow, merely by creating the complaints and other documents to be filed in court, is engaging in the unauthorized practice of law.

***Fifteenth Judicial Dist. Unified Bar Ass'n***, 1999 WL 1128847, at *4.

Although this Court has admonished the unauthorized practice of law, we have held that a person, who is possessed of a power of attorney, can file certain documents in court on behalf of the principal. ***Northcutt v. Northcutt***, No. M2006-00295-COA-R3-CV, 2007 WL 3332851, at *1 (Tenn. Ct. App. 2007). In ***Northcutt***, Terry Lee Northcutt was incarcerated and gave his power of attorney to Nancy Geiser so that she could assist Mr. Northcutt in filing documents associated with his divorce. *Id.* Ms. Geiser filed a motion for service by publication on behalf of Mr. Northcutt and obtained a money order to cover the cost of the publication. *Id.* When Mr. Northcutt filed a motion for default divorce, the trial court entered a *sua sponte* order dismissing Mr. Northcutt's complaint, in part, because the trial court found that Mr. Northcutt was being represented by Ms. Geiser who was engaged in the unauthorized practice of law. *Id.* at *2.

In reversing the trial court's decision on appeal, this Court focused on whether Ms. Geiser performed services that only lawyers could perform. We concluded that Ms. Geiser's filing did not require specialized legal knowledge; therefore, we held that she had not engaged in the unauthorized practice of law. Specifically, we stated that "[t]he record indicate[d] that the only acts . . . Ms. Geiser performed for Mr. Northcutt were to sign a request for publication on his behalf and to provide a postal money order payable to *The City Paper* to pay for the costs of publication," which did not amount to the unauthorized practice of law. *Id.* at 3.

Likewise, in *In re Estate of Green v. Carthage General Hospital, Inc.*, 246 S.W.3d 582 (Tenn. Ct. App. 2007), a nonlawyer hospital employee filed, on behalf of the hospital, a claim for unpaid services against the estate of a decedent. Relying on *Petition of Burson*, we determined that filing a claim against an estate is not the practice of law, to-wit:

> [F]iling a claim for debts due from a decedent does not require the exercise of the professional judgment of a lawyer. . . . Although the claims statutes require some specific inclusions, they are straightforward and do not require legal training to understand. Many clerks' offices have forms to assist creditors, and the claim filed in this case appears to be such a form.

*Id.* at 586.

Here, the record establishes that John Nixon did not draft any legal documents for his father. Rather, the Maury County Clerk's Office provided a form, which he filled out. The information John Nixon provided was not of any specialized nature; rather, it was information he knew or gleaned from the clerk's office. Furthermore, the record shows that Mr. Roe created the form motion after receiving "input from the tax committee with the Clerk of the Court Association, and then modified it for Maury County." Mr. Roe stated that he intentionally made the motion to redeem a simple form that nonlawyers could easily fill out. He testified:

> Q: Now these particular forms . . . these Motion forms with the blanks, is that something that you feel like people redeeming property from tax sales are capable of [filling] out and filing without having a lawyer write it up for them?
>
> A: You know, I think so. I think they're fairly straightforward in terms of if you were to compare them to the forms that the Supreme Court uses for divorcing parties, either with or without children . . . . Just in reviewing the form, if we're looking at the first page, all of the language at least seems clear, and in terms of the blank and what you're asking for, it's the date of the sale, the date confirming the sale. The only thing that I think someone

doing the form themselves might have trouble with, they would probably need to look at the court file to fill out the decree date, maybe confirm the sale. Everything else, at least from our perspective and when I compare that to other forms that either our office has or that's . . . approved by the Supreme Court, match with it in terms of trying to stay at a fourth or fifth grade level.

Nonetheless, in its order, the trial court found that:

[t]he drafting and filing of the statutorily-required "motion" to redeem involves the "drawing of papers, pleadings or documents . . . in connection with proceedings pending or prospective before any court," and therefore falls under the statutory definition of the "practice of law." Tenn. Code Ann. § 23-3-101(3). Furthermore, the drafting and filing of the statutorily-required "motion" to redeem requires professional legal judgment, thus distinguishing this matter from the authorities cited by the [Appellant] (***In re Estate of Green v. Carthage Gen. Hospital, Inc.***, 246 S.W.3d 582, 586 (Tenn. Ct. App. 2007) . . . and ***Northcutt v. Northcutt***, 2007 No. M2006-00295-COA-R3-CV, 2007 WL 3332851 (Tenn. Ct. App. Nov. 8, 2007)). In particular, the [c]ourt finds that the requirement of § 67-5-2701(b) that the motion "shall contain specific allegations establishing the right of the person to redeem the parcel" requires that the movant exercise personal legal judgment. Thus the [c]ourt finds that the drafting and filing of a motion to redeem a property from a tax sale constitutes the practice of law.

We disagree. Contrary to the trial court's finding, the instant case is more factually similar to ***Northcutt*** and ***In re Estate of Green*** than it is to ***Fifteenth Judicial District Unified Bar Ass'n***. The record does not establish that John Nixon drafted a legal document or gave his father legal advice. Unlike Ms. Glasgow's actions in ***Fifteenth Judicial District Unified Bar Ass'n***, John Nixon, on behalf of his father and under the power of attorney, merely filled out and filed a simple form that was provided by the clerk's office. This case is factually similar to ***Northcutt***, because, here, Appellant gave his son a limited power of attorney to manage the property. Believing that the power of attorney allowed him to file the Motion to Redeem, John Nixon never held himself out as a licensed attorney and never attempted to give anyone legal advice.

Furthermore, the information John Nixon provided on the Motion to Redeem did not require the expertise of a lawyer. Tennessee Code Annotated Section 67-5-2701 outlines the redemption procedure for property that has been sold at a tax sale. It provides in pertinent part:

(a)(1) Upon entry of an order confirming a sale of a parcel, a right to redeem shall vest in all interested persons. The right to redeem shall be

exercised within the time period established by this subsection (a) beginning on the date of the entry of the order confirming the sale, but in no event shall the right to redeem be exercised more than one (1) year from that date. The redemption period of each parcel shall be stated in the order confirming the sale based on the following criteria:

> (A) Unless the court finds sufficient evidence to order a reduced redemption period pursuant to this section, the redemption period for each parcel shall be one (1) year;

> \*\*\*

> (b)(1) In order to redeem a parcel, the person entitled to redeem shall file a motion to such effect in the proceedings in which the parcel was sold. The motion shall describe the parcel, the date of the sale of the parcel, the date of the entry of the order confirming the sale and shall contain specific allegations establishing the right of the person to redeem the parcel. Prior to the filing of the motion to redeem, the movant shall pay to the clerk of the court an amount equal to the total amount of delinquent taxes, penalty, interest, court costs, and interest on the entire purchase price paid by the purchaser of the parcel. The interest shall be at the rate of twelve percent (12%) per annum, which shall begin to accrue on the date the purchaser pays the purchase price to the clerk and continuing until the motion to redeem is filed. If the entire amount owing is not timely paid to the clerk or if the motion to redeem is not timely filed, the redemption shall fail.

Tenn. Code Ann. § 67-5-2701(a)(1)(A), (b)(1). The trial court concluded that listing the "specific allegations establishing the right of the person to redeem the parcel" required the professional judgment of a lawyer. Tenn. Code Ann. § 67-5-2701(b)(1). We disagree. Like the claims statutes at issue in *In re Estate of Green*, although the redemption statute here requires some specific inclusions, it does not require legal training to understand. In executing the form motion, John Nixon did not prepare a "legal document that require[d] more legal knowledge than is possessed by ordinary lay persons." *Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow*, No. M1996-00020-COA-R3-CV, 1999 WL 1128847, at \*4 (Tenn. Ct. App. 1999). To the contrary, he filled in the blanks on a form that was designed to be understood by lay persons because, as Mr. Roe testified, the redemption process is typically completed by the property owner as opposed to an attorney. Again, as stated by the Tennessee Supreme Court in *Petition of Burson*, "[t]he essence of the professional judgment of the lawyer is the lawyer's educated ability to relate the general body and philosophy of law to a specific legal problem of a client." *Petition of Burson*, 909 S.W.2d 768, 775 (Tenn. 1995) (quoting Tenn. Sup. Ct. R. 8, EC 3-5). John Nixon did not need legal knowledge to execute the motion on behalf of Appellant. Based on the particular facts of this case, we conclude

that John Nixon was not engaged in the unauthorized practice of law when he executed the Motion to Redeem on behalf of Appellant. The only question, then, is whether John Nixon's actions were outside the scope of the power of attorney. We now turn to that question.

## B. Power of Attorney

We first note that neither party raised the issue of whether the power of attorney provided John Nixon authority to execute the Motion to Redeem. However, while this Court's review is usually limited to those issues presented for appeal, we may also consider issues not presented for review if doing so will prevent needless litigation. Tenn. R. App. 13(b). Tennessee Code Annotated Section 34-6-109 provides:

> Without diminution or restriction of the powers vested in the attorney in fact, by law or elsewhere in the instrument . . . the attorney in fact, without the necessity of procuring any judicial authorization, or approval, shall be vested with and in the application of the attorney in fact's best judgment and discretion on behalf of the principal shall be authorized to exercise the powers specifically enumerated in this section:
>
> ***
>
> (17) Sue, defend or compromise suits and legal actions, and employ counsel in connection with the suits and legal actions . . . .
>
> ***

T.C.A. § 34-6-109(17).

Turning to the record, it is undisputed that John Nixon held Appellant's power of attorney at the time he filed the Motion to Redeem. The power of attorney, which was executed by Appellant on August 10, 2016, states in relevant part:

> That I, Clarence E. Nixon of Smith County, Tennessee do hereby make, constitute and appoint that my son John T. Nixon of Rutherford County, Tennessee, my true and lawful attorney-in-fact for me and in my name, place and stead, and on my behalf, and for my use and benefit to manage certain of my affairs as follows:
>
> Buy, sell, lease, alter, maintain, pledge or in any way deal with the real property known as 902 Hillcrest Avenue, Columbia, Tennessee 38401 . . . exclusively and sign each instrument necessary or advisable to complete any real property transaction . . . .

\*\*\*

Sue, defend or compromise suits and legal actions, and employ counsel in
connection with the same . . . .

\*\*\*

From the plain language of the document, the power of attorney gave John Nixon the
power to "sue, defend or compromise suits and legal actions" regarding the subject
Property.  By filing the Motion to Redeem, John Nixon was, in effect, defending against
a legal action involving the Property for which he held a power of attorney.

Having concluded that John Nixon held a valid power of attorney that allowed him
to take legal action regarding the subject Property, and having also concluded that John
Nixon did not engage in the unauthorized practice of law, we reverse the trial court's
order.  The Motion to Redeem filed by John Nixon on March, 15, 2017 is valid.

## V.  Conclusion

For the foregoing reasons, we reverse the trial court's order.  The case is remanded
for such further proceedings as may be necessary and are consistent with this opinion.
Costs of the appeal are assessed against the Appellee, G. Co. Investments, LLC, for all of
which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE