IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2013 Session

IN RE ESTATE OF JAMES E. MILLER

Appeal from the Probate Court for Monroe County
No. 2010-117      J. Reed Dixon, Judge

No. E2012-02215-COA-R3-CV Filed July 12, 2013

In this action, a creditor brought a claim against the decedent's estate for the value of cattle
and equipment.  With the personal representative for the estate filing an exception to the
claim, the creditor filed an amended claim, seeking to enforce an attached handwritten
contract.  The trial court dismissed the amended claim as both untimely and asserting a new
and different cause of action.  On appeal, the creditor raises two issues:  whether the trial
court erred (1) by finding that the claimant was not entitled to actual notice of the probate
proceedings pursuant to Tennessee Code Annotated § 30-2-306(d) (2010) and (2) by
dismissing the amended claim pursuant to Tennessee Code Annotated § 30-2-307(e)(2)
(2010).  Discerning no error, we affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D.
SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Russell J. Blair, Athens, Tennessee, for the appellant, Andy Kenneth Miller, Jr.

Ashley Harrison Shudan, Loudon, Tennessee, for the appellee, Estate of James E. Miller.

OPINION

I.  Factual and Procedural Background

        The claim giving rise to this appeal originated with what the claimant, Andy Kenneth
Miller, Jr., alleges was his partnership with the Decedent, James E. Miller, in a business

marketing and selling cattle.[1]  Mr. Miller contends that he and the Decedent entered into a valid handwritten contract on September 15, 2006, in which they agreed to be equal co-owners of 376 head of cattle.  He alleges, *inter alia*, that the contract provided the Decedent was to pay him $49,460 as consideration for the Decedent's retaining all profits from cattle sales for four years.  Mr. Miller claims the Decedent was then to pay him for his one-half interest in all 376 head of cattle at either their fair market value or $1,000 a head, whichever was greater.

The Decedent owned and operated Jim Miller Excavating, Inc.  He died intestate on July 17, 2010.  His wife, Vickie C. Miller, opened the estate by order of the Monroe County Probate Court, which granted letters of administration on November 29, 2010.  Ms. Miller, as the Personal Representative for the estate ("Personal Representative"), first published the notice to creditors in the local newspaper on December 9, 2010.  *See* T.C.A. § 30-2-306.

Mr. Miller, initially self-represented, filed a claim against the estate on April 8, 2011. The claim was handwritten on a probate court form.  It listed as "Items and Nature of Claim":

|  |  |
|---|---|
| Cattle | $188,000 |
| [Equipment] | $ 22,000 |

No documents or respective copies were attached to the claim.  The Personal Representative filed an exception to Mr. Miller's claim, arguing, *inter alia*, that the claim did not arise from a valid debt and that the statutory requirement of attaching a written instrument in support of the claim had not been met.  *See* T.C.A. § 30-2-307(b).

On July 8, 2011, Mr. Miller, then represented by counsel, filed an amended claim, entitled "Andy Kenneth Miller Jr.'s Amended Claim Pursuant to T.C.A. § 30-2-307(e)(2), or alternatively, Andy Kenneth Miller Jr.'s Original Claim Pursuant to T.C.A. § 30-2-306(d) and T.C.A. § 30-2-307(a)(1)(B)."  The amended claim was for the same amount as the original claim, with the total for cattle itemized at $1,000 per head and large machinery described as an 853 Bobcat Skid Loader and a 977 CAT Front End Loader.  Mr. Miller alleged in the amended claim that he was a known or reasonably ascertainable creditor of the Decedent and was never provided with actual notice according to law.

---

[1] The Personal Representative states in her brief on appeal that Andy Kenneth Miller, Jr., and James E. Miller were brothers, an assertion the claimant does not dispute in his brief.

To his amended claim, Mr. Miller attached a copy of a handwritten agreement, dated September 15, 2006, bearing signatures for "Jim Miller" and "Ken Miller." The signatures were not notarized. The agreement stated the following:

Cattle agreement between Jim & Ken Miller

Jim and Ken Miller are Fifty Fifty owners of 376 three hundret & seventy six head of cattle.
Jim Miller agrees To manage & market Calf Sales of Cattle For Four years. From the Fall of 2006 until Fall of 2010. Jim Miller agrees to pay Ken Miller $49,460 Fourty Nine Thousand Four hundred and Sixty Dollars, For his intrest in calf sales as of This date 9-15-06. In return Ken Miller agrees To let Jim Miller have all calf sales money untill the fall Sept-Oct-Nov. of 2010. at this time Jim Miller agrees to pay Ken Miller one Thousand $1,000 or Market Price, Per head For his 1/2 one half of 376 head of Cattle, whitch ever is Greater.

(Text duplicated as in original attachment to amended claim.) Also attached to the amended claim were copies of receipts showing twelve payments from Jim Miller Excavating, Inc., to Mr. Miller, dated September 25, 2006, through March 14, 2007, and totaling $49,460. Mr. Miller alleged that these payments demonstrated the Decedent's acknowledgment of their contract. A bill of sale evidencing Mr. Miller's 1999 purchase of the Bobcat Skid Loader for $14,500 was also attached.

The Personal Representative filed a motion to dismiss Mr. Miller's amended claim, arguing that (1) it was untimely pursuant to Tennessee Code Annotated § 30-2-307(e)(2) and should be declared void; (2) the attached handwritten agreement was not valid and did not show a verified signature from the Decedent; (3) the Decedent had paid more than $49,460 to Mr. Miller for various transactions, but the receipts attached to the amended claim were selected to equal this amount; and (4) the copies of receipts attached to the amended claim did not prove the existence of a contract for cattle. The Personal Representative admitted not having provided actual notice to Mr. Miller but denied that Mr. Miller was a known creditor. She further argued that such notice was not necessary, pursuant to Tennessee Code Annotated § 30-2-306(d), once Mr. Miller had filed a claim. Mr. Miller filed a brief in response to the Personal Representative's motion to dismiss in which he argued in support of several positions. He specifically contended that the Personal Representative had an affirmative duty to provide actual notice to him as a reasonably ascertainable creditor, that he as a claimant was "simply seek[ing] the opportunity to supplement an already timely filed claim," and that denying his amendment would yield an unjust result.

3

Following a bench hearing, the trial court granted the Personal Representative's motion to dismiss Mr. Miller's amended claim. In its Order, entered November 10, 2011, the court stated in pertinent part:

A.      Andy Kenneth Miller's original claim was timely filed on April 8, 2011.

B.      An exception to the original claim was filed on May 6, 2011.

C.      The claimant had until June 8, 2011 to amend his claim or raise additional issues; however, the claimant did not file his amended claim until July 8, 2011.

D.      The claimant's amended claim asserted a new and different cause of action based on contract and was not timely filed.

E.      Personal notice to the claimant was not necessary pursuant to TENN. CODE ANN. § 30-2-306(d) because the claimant had already filed a claim.

Mr. Miller filed a motion to alter, amend, or set aside the dismissal order, in which he emphasized that the amended claim cured a "technical deficiency" in the original by attaching documentation of the contract that underlay the initial claim. The trial court denied Mr. Miller's motion on September 14, 2012, concluding that its prior ruling "was made under thoughtful deliberation and was proper." Mr. Miller timely appealed.

## II. Issues Presented

On appeal, Mr. Miller presents two issues, which we restate as follows:

1.      Whether the trial court erred in finding that Mr. Miller was not entitled to actual notice of the probate proceedings pursuant to Tennessee Code Annotated § 30-2-306(d) (2010).

2.      Whether the trial court erred by dismissing Mr. Miller's amended claim pursuant to Tennessee Code Annotated § 30-2-307(e)(2) (2010).

4

### III. Standard of Review

We review a non-jury case tried in the probate court *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

Resolution of the issues presented in this appeal also involves principles of statutory construction, which our Supreme Court has summarized as follows:

> Our "primary goal in interpreting statutes is 'to ascertain and give effect to the intention and purpose of the legislature.'" *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000) (quoting *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000)). When the statutory language is unambiguous, we apply its plain and ordinary meaning. *Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 24 (Tenn. 2000). When the statutory language is ambiguous, we must look to other sources, such as legislative history, to determine the intent and purpose of the legislature. *Id.*

*Conley v. State*, 141 S.W.3d 591, 595 (Tenn. 2004); *see also Burke v. Langdon*, 190 S.W.3d 660, 662 (Tenn. Ct. App. 2005).

### IV. Actual Notice

It is undisputed that the Personal Representative did not provide Mr. Miller with actual notice of the probate proceedings. In his brief on appeal, Mr. Miller concedes that Tennessee Code Annotated § 30-2-306(d) "in operation, excuses notice where a Claimant (in this case, Appellant) had already filed a claim." He contends, however, that this statutory exception should not relieve the Personal Representative of an affirmative duty to send actual notice to a known or reasonably ascertainable creditor of the estate. The Personal Representative posits that the trial court properly found no necessity for actual notice because Mr. Miller had already filed a claim. We agree with the Personal Representative.

Subsections (a) through (c) of Tennessee Code Annotated § 30-2-306 describe the duty of the probate court clerk to issue a notice to creditors via publication within thirty days

after the court has issued letters testamentary or of administration.[2] Subsection (d) provides the following regarding the Personal Representative's affirmative duty to provide actual notice to creditors:

> (d) In addition, it shall be the duty of the personal representative to mail or deliver by other means a copy of the published or posted notice as described in subsection (b) to all creditors of the decedent of whom the personal representative has actual knowledge or who are reasonably ascertainable by the personal representative, at the creditors' last known addresses. *This notice shall not be required where a creditor has already filed a claim against the estate, has been paid or has issued a release of all claims against the estate.*

(Emphasis added.) *See also Bowden*, 27 S.W.3d at 916 n.3 (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478 (1988), for the origin of the statutory requirement for actual notice to "reasonably ascertainable" creditors). This Court has held that a personal representative can be held personally liable for breaching the duty to provide the notice to creditors created by statute. *Burke*, 190 S.W.3d at 665.

Pursuant to the version of Tennessee Code Annotated § 30-2-306(b) in effect in 2011 when Mr. Miller filed his original and amended claims, and therefore governing in this action, creditors were required to file claims against the estate within either four months from the date of the first publication or posting of notice or twelve months from the decedent's date of death, whichever was earlier. Otherwise, the claims would be "forever barred."[3] Mr. Miller timely filed his original claim on April 8, 2011, one day before the four-month

---

[2] Subsection (e) provides that the court clerk's duty to issue notice does not apply "if the letters testamentary or of administration are issued more than one (1) year from the decedent's date of death."

[3] The Tennessee General Assembly amended Tennessee Code Annotated § 30-2-306(b) in 2012 to provide within the requirements for "Notice to Creditors":
> (1)(A) Four (4) months from the date of the first publication (or posting, as the case may be) of this notice if the creditor received an actual copy of this notice to creditors at least sixty (60) days before the date that is four (4) months from the date of first publication (or posting); or
>    (B) Sixty (60) days from the date the creditor received an actual copy of the notice to creditors if the creditor received the copy of the notice less than sixty (60) days prior to the date that is four (4) months from the date of first publication (or posting) as described in (1)(A); or
>
> (2) Twelve (12) months from the decedent's date of death.

*See* 2012 Pub. Acts, ch. 886, § 4.

statutory period for filing closed, as notice to creditors was first published on December 9, 2010. Lack of actual notice from the Personal Representative did not, therefore, result in an untimely filing of the initial claim.

Mr. Miller argues instead that his case was prejudiced by lack of actual notice because given more time to prepare, he could have filed an original claim complete with the supporting documentation required by statute. *See* T.C.A. § 30-2-307(b) ("When any claim is evidenced by a written instrument, the instrument or a photocopy of the instrument shall be filed . . . ."). Pursuant to the version of Tennessee Code Annotated § 30-2-307(a)(1) in effect when Mr. Miller filed his claim, receiving actual notice, provided that it was before the end of the twelve-month period following the Decedent's death, would have given Mr. Miller sixty days from receipt of said actual notice to file a claim. This subsection provided:

> (a)(1) All claims against the estate arising from a debt of the decedent shall be barred unless filed within the period prescribed in the notice published or posted in accordance with § 30-2-306(b). However:
>       (A) If a creditor receives actual notice less than sixty (60) days before the expiration of the period prescribed in § 30-2-306(b) or after the expiration of the period prescribed in § 30-2-306(b) and more than sixty (60) days before the date that is twelve (12) months from the decedent's date of death, the creditor's claim shall be barred unless filed within sixty (60) days from the date of receipt or actual notice; or
>       (B) If a creditor receives actual notice less than sixty (60) days before the date that is twelve (12) months from the decedent's date of death or receives no notice, the creditor's claim shall be barred unless filed within twelve (12) months from the decedent's date of death.

T.C.A. 30-2-307(a)(1) (2010).[4]

Conversely, Mr. Miller also posits that because he received no actual notice, in the hypothetical event that he had not filed the original claim within the four-month deadline following notice to creditors, the filing of his amended claim on July 8, 2011, would have been within the one-year period for the filing of claims when no notice has been given, pursuant to Tennessee Code Annotated § 30-2-306(b). Ergo, he suggests that the trial court could have treated the amended claim as a timely filed new claim. In summary, Mr. Miller

---

[4]The Tennessee General Assembly amended Tennessee Code Annotated § 30-2-307(a)(1) in 2012 to delete subsections (a)(1)(A) and (a)(1)(B) and make reference only to the time requirements for filing after receiving actual notice, which remain unchanged, as they are now stated in Tennessee Code Annotated § 30-2-306(b)(1). *See* 2012 Pub. Acts, ch. 886, §§ 4-6.

contends that following the statutory exception found in Tennessee Code Annotated §30-2-306(d) created an unjust result by punishing him for arriving at the courthouse a day before the four-month deadline after notice to creditors was filed and by rewarding a personal representative who was negligent in not sending actual notice.

Mr. Miller cites no applicable authority to support his argument that the statutory exception exempting actual notice to a creditor who has already filed a claim should not apply in this case. He does reference *Needham v. Moore* for the proposition that the statutes of the Tennessee Claims Act, initially enacted in 1939 and now codified and amended as Tennessee Code Annotated § 30-2-306 *et seq.*, are to be construed liberally. *See Needham*, 292 S.W.2d 720, 722 (Tenn. 1956) ("As has been said in a number of opinions the purpose of this Act is to afford a very simple and expeditious remedy for the administration of estates, and in doing so the Act is liberally construed."). In *Needham*, our Supreme Court addressed a conflict between interpretations regarding two sections of the Claims Act affecting how parties were calculating a "month" to determine the deadline for filing an exception to a claim. *Id.* at 723. We do not construe the holding in *Needham* as supporting waiver of the statutory exception to the notice requirement based on the principle of liberal construction alone.

Proper notice to creditors provides, at a minimum, information regarding the commencement of probate proceedings and the time allowed for filing a claim. *See Estate of Jenkins v. Guyton*, 912 S.W.2d 134, 138 (Tenn. 1995). As the Personal Representative notes, once a creditor has filed a claim, he or she no longer needs the information provided by notice. We conclude that the language of Tennessee Code Annotated § 30-2-306(d) expressly and unambiguously provides that receipt of actual notice of probate proceedings from the personal representative is not required for a creditor who has timely filed a claim against the estate. We further conclude that the trial court properly did not reach the question of whether Mr. Miller was a reasonably ascertainable creditor of the estate because that question is rendered moot by application of the aforementioned statutory exception to the notice requirement. Mr. Miller is not entitled to relief on this issue.

V.  Timeliness of Amended Claim

In dismissing Mr. Miller's amended claim as untimely, the trial court found that the original claim was not amended within the statutory deadline and that the amended claim actually introduced a new and different cause of action based on contract law. Mr. Miller concedes that he filed the amended claim after the deadline but argues that extraordinary circumstances dictated that he should have been granted an extension. He also asserts that his amended claim simply added needed documentation to the initial claim and did not state a new cause of action. The Personal Representative contends that no extraordinary

circumstances existed to warrant an extension of the statutory deadline for filing an amended claim. We agree with the Personal Representative.

As previously noted, Mr. Miller filed his original claim on April 8, 2011. Tennessee Code Annotated § 30-2-307(e)(1) provides:

> A creditor who has timely filed a claim against the estate shall file any amendment to its claim no later than thirty (30) days from the later of:
>
> > (A) The date an exception to the claim is filed; or
> >
> > (B) The expiration of the exception period.

The Personal Representative filed an exception to Mr. Miller's original claim on May 6, 2011; therefore, the thirty-day deadline for filing an amended claim under subsection (e)(1)(A) was June 5, 2011. The exception period, however, did not expire until May 9, 2011, or four months plus thirty days after notice was first published on December 9, 2010. *See* T.C.A. § 30-2-314(a) (2010) (providing that a personal representative may file an exception to a claim against an estate "[u]ntil thirty (30) days after the expiration of four (4) months from the date of the notice to creditors given as provided in § 30-2-306(b) . . . ."). Mr. Miller therefore had through June 8, 2011, as thirty days past the end of the exception period, by which to file his amended claim. *See* T.C.A. § 30-2-307(e)(B). He filed his amended claim on July 8, 2011, one month beyond this deadline.

Tennessee Code Annotated § 30-2-307(e)(2) provides:

> Unless the court with jurisdiction over the probate of the decedent's estate grants an extension of time for amendment on the creditor's showing of extraordinary circumstances, any amendment filed after the time prescribed shall be void.

Further, we shall not disturb the trial court's denial of permission to amend the claim absent an abuse of discretion. *See Estate of Haskins*, 224 S.W.3d at 678 ("The granting or denying of a motion to amend is within the sound discretion of the trial court and will be reversed only for an abuse of discretion.") (quoting *March v. Levine*, 115 S.W.3d 892, 908 (Tenn. Ct. App. 2003)).

As our Supreme Court has noted in determining whether a claim against an estate was timely filed:

9

> Statutory enactments barring claims which are filed against an estate beyond a certain time period frequently are referred to as "nonclaim" statutes. The purpose served by such nonclaim statutes is the promotion of an "orderly, expeditious, and exact settlement of estates of decedents."

*Bowden*, 27 S.W.3d at 918 (quoting *Alamo Dev. Corp. v. Thomas*, 212 S.W.2d 606, 607 (1948)). Historically, Tennessee courts have "permitted a party to amend a claim after the filing deadline passed provided the amendment does not introduce a 'new cause or a new party.'" *Estate of Haskins*, 224 S.W.3d at 685 (quoting *In re Estate of Dukes*, No. M2004-00340-COA-R3-CV, 2006 WL 468721 at *5 (Tenn. Ct. App. Feb. 27, 2006) (quoting *Cooper's Estate v. Keathley*, 177 S.W.2d 356, 359 (Tenn. 1943))). As noted by the *Haskins* court, the enactment of Tennessee Code Annotated 30-2-307(e) in 2005, however, "established time lines for amending a claim against an estate and imposed additional restrictions to amending a claim after the deadline to file a claim against an estate has passed." 224 S.W.3d at 685.

Mr. Miller relies on *In re Estate of Green v. Carthage Gen. Hosp., Inc.*, 246 S.W.3d 582 (Tenn. Ct. App. 2007), in support of his position that because a claim is an informal statement of a cause of action, permission to correct a deficiency may be freely given. This Court noted in *Estate of Green* that a claim against an estate is not a formal pleading and is not subject to the Tennessee Rules of Civil Procedure. *See* 246 S.W.3d at 585. In support of its holding, this Court in *Estate of Green* observed that "merely filing a claim against an estate is not the practice of law." *Id.* at 586 (reversing the trial court's ruling that a hospital's claim against an estate was void because the non-lawyer hospital official who filed the claim had engaged in the unauthorized practice of law). Mr. Miller's reliance on *Estate of Green* is misplaced, as the issue of whether extraordinary circumstances existed to warrant an extension of time for filing an amended claim was not addressed in that decision.

Since the enactment of Tennessee Code Annotated § 30-2-307(e) in 2005, our appellate courts have not addressed the specific question of what constitutes extraordinary circumstances sufficient to warrant an exception to the statutory deadline for filing amended claims. It is clear in this case, however, that the facts do not rise to the level of extraordinary circumstances. Despite Mr. Miller's contention that his cause was prejudiced by a lack of time to amend his complaint, we note that after the Personal Representative filed her exception to the original claim, Mr. Miller had thirty-three days, from May 6 through June 8, 2011, to respond to the alleged deficiencies and file his amended claim within the deadline. We conclude that the trial court did not abuse its discretion by dismissing the amended complaint. Because we have determined that the trial court did not err in dismissing the amended complaint as untimely, the issue of whether the amended complaint stated a new cause of action based in contract law is pretermitted as moot.

10

## VI.  Conclusion

For the reasons stated above, the judgment of the trial court granting the Personal Representative's motion to dismiss Mr. Miller's amended claim is affirmed.  This case is remanded to the trial court, pursuant to applicable law, for such further proceedings as may be required, if any, and for collection of costs assessed below.

_____

THOMAS R. FRIERSON, II, JUDGE